**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| INSIGHT TERMINAL SOLUTIONS, LLC | ) | CASE NO. 19-32231(1)(11) |
| | ) | (Jointly Administered) |
| Debtors | ) | |
| | ) | |
| INSIGHT TERMINAL SOLUTIONS, LLC | ) | AP NO. 21-3013 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CECELIA FINANCIAL MANAGEMENT, LLC, HALAS ENERGY, LLC, OASIS AVIATION, LLC and JOHN J. SIEGEL | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM-OPINION-ORDER**

This matter returns to this Court upon remand from the Sixth Circuit Court of Appeals ("Sixth Circuit"). The Sixth Circuit reversed this Court due to an incorrect legal interpretation contained in the Findings of Fact and Conclusions of Law ("Findings") entered on January 11, 2023. Pursuant to the Findings, the Court entered Judgment in favor of Bay Bridge Exports, LLC ("Bay Bridge") on its claim against the reorganized Debtor Insight Terminal Solutions, LLC (hereinafter referred to as "ITS"). The Sixth Circuit has directed this Court to apply the correct legal standard and determine if this Court, the trier of fact, would utilize its discretion and

reconsider the admission of certain excluded evidence and whether it would change this Court's decision on the merits of the case.

The Court declines to repeat the voluminous history of this case and instead invites interested parties to review (1) the record of the Chapter 11 Bankruptcy Proceeding, Case No. 19-32231; (2) the record of this Adversary Proceeding; (3) this Court's Findings; (4) the record of the Bankruptcy Appellate Panel ("BAP"), Case No. 23-8004, which affirmed this Court's Findings; and, finally, (5) the Opinion of the Sixth Circuit ("Circuit Opinion") entered on August 25, 2025, reversing and remanding the matter to this Court.

The Sixth Circuit reviewed the Findings *de novo* and reversed this Court based upon a single legal error. The error consists of this Court's decision to exclude certain evidence based upon an incorrect interpretation of Civil Rule 32. The deposition of Mr. John J. Siegel (the "Deposition") was the only evidence excluded from the record pursuant to Civil Rule 32. The Sixth Circuit directs this Court to reevaluate its decision. In addition, the Sixth Circuit directs this Court to apply Fed. R. Evid. 801(d)(2), as amended by the Supreme Court and effective December 1, 2024, post-trial.

The parties to this Adversary Proceeding have agreed by consent, upon remand to this Court, to the admission of the Deposition into the record. Thus, admissibility of the Deposition is no longer in dispute. Nevertheless, the Court will fulfill its responsibility to respond to the Sixth Circuit's directions contained in the Circuit Opinion.

**CIVIL RULE 32**

ITS included the Deposition in their Exhibits to be introduced at trial and Bay Bridge filed a Motion in Limine requesting the exclusion of the Deposition. This dispute was argued by the parties at trial. Instead of allowing the Deposition to be included in the record, the Court allowed it to be proffered into the record. This allowed both parties to argue their positions relating to the Deposition in their closing arguments and in their Proposed Findings of Fact and Conclusions of Law. The Court thoroughly reviewed each party's filing, along with the evidence tendered into the record, including the proffered Deposition and chose the Findings tendered by Bay Bridge.

The Sixth Circuit states that this Court "misread the law by holding that it had to exclude the deposition for lack of cross-examination as a matter of law." (*See* Circuit Opinion 11.) The Findings erroneously state that while the express conditions stated in Civil Rule 32(a)(1) for admission of a deposition against a party at trial may be satisfied, it also contained the implied condition that the party opposing the use of the deposition must have had "an adequate opportunity to cross-examine" the deponent for the deposition to be admitted. The Sixth Circuit observed that excluding a deposition, otherwise allowed under the express terms of Civil Rule 32, is a discretionary power of the trial court.

**FED. R. EVID. 801(d)(2)**

Post-trial, the Supreme Court amended Fed. R. Evid. 801(d)(2) ("Rule 801") effective December 1, 2024. The Supreme Court directed that this amendment should apply in all proceedings "thereafter commenced and, insofar as just and practicable, all proceedings then pending." *See* Order Amending Federal Rules of Evidence, at 3 (Apr. 2, 2024); *See also* 28 U.S.C. § 2074(a). The Sixth Circuit states that it is "just and practicable" for this Court to apply the

amended Rule 801 on remand and to reevaluate the admissibility of the Deposition under the current legal standard.

Rule 801 embodies a different hearsay exception which this Court applied to exclude the Deposition against Bay Bridge, the successor-in-interest to Cecelia by assignment of its Proof of Claim against ITS. Bay Bridge acknowledged that the testimony could have been used against Cecelia as Mr. Siegel testified as its representative under Fed. R. Civ. P. 30(b)(6). Rule 801 now states, "[i]f a party's claim, defense, or potential liability is directly derived from a declarant or the declarant's principal, a statement that would be admissible against the declarant or the principal under this rule is also admissible against the party." Fed. R. Evid. 801(d)(2).

Further analysis of both Civil Rule 32 and Rule 801 is unnecessary at this point as the parties to this proceeding have agreed to the admission of the Deposition into the record. *See* Bay Bridge Exports, LLC's Reply to Plaintiff Insight Terminal Solutions, LLC's Mem. 3, Dkt. No. 186.

Notwithstanding the admission of the Deposition into the record, this Court observes as it did in its Findings that the Court has the discretion to afford what it deems to be the appropriate "weight" to the admitted testimony.

## DISCRETION TO ADMIT AND WEIGHT AFFORDED THE DEPOSITION

Insight Terminal Solutions, LLC filed its voluntary Chapter 11 proceeding on July 17, 2019 and the case was assigned to this Court. Since the case was filed, the Court has acted as the trier of fact on many issues, made decisions based upon the pleadings, motions, documents and many hours of testimony, all of which resulted in a confirmed Plan of Reorganization. After Mr. Siegel's death in April 2022, Autumn Wind Lending ("AWL"), a lender to ITS prepetition, became the

successful Plan proponent. ITS is now a wholly owned subsidiary of AWL. (*See* Findings 39, ¶ 51, referring to DX-22, Tandon Dep. 21:9-23.)

During the bankruptcy case, and prior to the filing of this Adversary Proceeding, the Court had occasion to listen to testimony from representatives of the respective stakeholders. The Court was able to observe, listen to and evaluate Mr. Siegel's deportment during the many contentious proceedings typical in a complex Chapter 11 case. The Deposition is testimony from Mr. Siegel who, along with others, orchestrated the early business operations of ITS. The Deposition has serious infirmities which will be discussed in detail.

In applying its discretion as to the weight afforded to the Deposition, the Court is informed by its experience as the trier of fact at the trial of this matter, the record before it, the Stipulation of Material Undisputed Facts executed by both parties to this litigation on September 10, 2022, the actual Deposition, which this Court has read and studied**,** and the Court's previous numerous opportunities to observe Mr. Siegel before his death. The Court believes that consideration of the Deposition as evidence requires its weight to be largely diminished for two reasons. First, the Deposition is not complete as Bay Bridge did not have an opportunity to cross-examine Mr. Siegel. Second, the Court finds that the erosion of Mr. Siegel's health and mental acuity render the quality of Mr. Siegel's testimony convoluted, at times contradictory and unreliable. Cross-examination of Mr. Siegel would have provided an opportunity to test the trustworthiness of his testimony. Absent cross-examination, the value of the Deposition is considerably reduced. *See In re Complaint of Paducah Towing Co., Inc.*, 692 F.2d 412 (6th Cir. 1982).

In the Court's opinion, given what it believes to be a far greater than average opportunity to observe a witness, Mr. Siegel was an extraordinary person. Mr. Siegel was an educated, highly intelligent and extremely savvy businessman. He had the zeal of an entrepreneur and while still

healthy, enormous physical energy. Mr. Siegel was a credible, reliable and sophisticated witness when healthy. Mr. Siegel's reliability was vastly reduced once he developed metastatic bone cancer.

The Court finds the Deposition is not complete. The Deposition demonstrates the necessity of cross-examination. Mr. Siegel was too weak to answer questions for more than a few hours each day and was unable to testify thereafter due to his obvious ill health and rapid decline. Then he died. The lack of an opportunity to cross-examine a witness like Mr. Siegel, given his expansive, contradictory and complex testimony in the Deposition is material. Had Mr. Siegel lived, cross-examination most certainly would have given Bay Bridge and ITS the opportunity to clarify what had become a muddled record.

A clear demarcation between the "healthy" Mr. Siegel and the declining "seriously ill" Mr. Siegel is evident to the Court in the Deposition. The Court reached this conclusion when it entered its Findings, yet failed to provide sufficient detail in the record reflecting its conclusion. As the trier of fact, the Court finds that the quality of Mr. Siegel's testimony at the Deposition evidences his inexorable decline in health and mental acuity. The quality of Mr. Siegel's testimony in the Deposition also represents a clear departure from what the Court had observed from Mr. Siegel in prior Court proceedings. Thus, the Court believes the Deposition is largely diminished in its evidentiary value.

During the Deposition, Mr. Siegel provided the "back story" to the Oakland Redevelopment Project. While this history is interesting, the Court finds the Deposition contains many examples of Mr. Siegel's decline and the diminishment of his reliability as a witness. The Court will name a few of the "issues" elucidated by the Deposition that demonstrate Mr. Siegel's ill health.

On the first day of the Deposition, Mr. Siegel testified that he was taking chemotherapy treatments along with "ancillary medications that are required to interact." (*See* PX-2, Siegel Dep. 10.) He was too weak to prepare for the deposition. (*See* PX-2, Siegel Dep. 17.) Mr. Siegel was anemic because his bone marrow was dead and his body was no longer making red blood cells. (*See* PX-2, Siegel Dep. 77.)

Mr. Siegel arrived at Day 2 of the examination "infinitely better." (*See* PX-3, Siegel Dep. 8.) Yet, Mr. Siegel was both argumentative and brusque to counsel, later apologizing, suggesting something about his physiology made him do weird things. (*See* PX-3, Siegel Dep. 14, 22 and 27-28.)

Further, Mr. Siegel testified that he could no longer fly commercial airlines as he could not physically manage trips through the airports necessary to get to his destinations. (*See* PX-2, Siegel Dep. 77-78; *See also* PX-3, Siegel Dep. 162.) He also testified that he had difficulty walking from one conference room to another in his lawyer's offices. *Id.* He had difficulty handling the exhibits tendered to him stating his hands were brittle. (*See* PX-2, Siegel Dep. 103.) The Court observes that Mr. Siegel was a proud man and had once played, briefly, in the National Football League for the Chicago Bears. (*See* PX-3, Siegel Dep. 31.) The Court believes his evident decline and obvious difficulty during this two day Deposition was authentic.

Mr. Siegel had disturbing memory lapses during the Deposition such as,

> . . . "[A]nd we pay it, and you can't meet the—you—you're—you're—you're—part of the—you're—you're—you're—you're—God, my brain. You're—you're part of the capital call, you know, we take over."

(*See* PX-2, Siegel Dep. 76.) Mr. Siegel had repeated difficulty understanding the questions asked by counsel throughout the two day event and acknowledged to counsel that he was disappointed

with his ability to have the necessary mental acuity for the Deposition. (*See* PX-2, Siegel Dep. 79; *See also* PX-2, Siegel Dep. 83-85.)

Mr. Siegel frequently contradicted himself, rendering a record that contained different answers and conclusions about salient details. These contradictions resulted in vastly different characterizations which were argued by both parties in their respective filings in the record before this Court. Also, Mr. Siegel engaged in frequent "stream of consciousness" answers to questions. These verbose and often off topic answers regarding the extremely complex history of ITS and the Oakland Redevelopment Project made following Mr. Siegel's testimony difficult. It further resulted in many answers capable of different conclusions. (*See* PX-2, Siegel Dep. 91-108.)

The Court finds that the host of problems with the Deposition overwhelmingly support affording the Deposition minimal weight. The inability for Bay Bridge to cross-examine Mr. Siegel, blended with Mr. Siegel's diminishment, resulted in a muddled record.

The Court observes that the parties to this action have had ample opportunity to argue freely about the merits and detriments of the Deposition. Those opportunities included lengthy pretrial arguments, closing arguments, and the parties submitted Proposed Findings of Fact and Conclusions of Law, all of which specifically referenced the details of the Deposition. **It is clear** there is no new information to be learned in an additional review of the Deposition insofar as the Court is concerned.

The Sixth Circuit directed this Court, upon reconsidering the admissibility of the Deposition and if it is admitted, to consider the "impact" that it might have on the factors set out in *Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.)*, 269 F.3d 726, 747-53 (6th Cir.

2001)[1] The Court will review those factors in light of the admission of the Deposition and will afford it the weight determined by the Court in its discretion as the trier of fact.

The recharacterization of debt to equity, which is the subject of this litigation under the *AutoStyle* case, utilizes a multi-factor test from *Roth Steel Tube Co. v. Commissioner of Internal Revenue*, 800 F.2d 625 (6th Cir. 1986), *cert. denied*, 481 U.S. 1014 (1987). ITS, as the party seeking recharacterization under this case, bears the burden of proof.

The Court is the trier of fact most familiar with the parties and the voluminous evidence produced and argued throughout the entire proceedings. Mr. Siegel became an unreliable witness and absent a meaningful opportunity for Bay Bridge to cross-examine him, the Deposition must be discounted in its evidentiary value. Therefore, the Court will use its broad discretion as the trier of fact to afford the Deposition little weight. Nevertheless, the Court will review its Findings in light of the Deposition now admitted and the *AutoStyle* factors.

**FURTHER FINDINGS BASED UPON ADMISSION OF THE SIEGEL DEPOSITION AND THE *AUTOSTYLE* FACTORS**

I. The names given to the instruments, if any, evidencing the indebtedness.

The Court determined in its Findings that the Notes, literally called Notes, payable to the order of Bowie or Cecelia, evidencing the indebtedness, and assigned to Bay Bridge were enforceable as a matter of Kentucky Law under Article 3 of the Uniform Commercial Code. (*See* Findings, No. IV, Conclusions of Law, Enforceability of TLS and ITS Notes under Kentucky Law, ¶¶ 1-15; *See also* ¶ 39.) The Sixth Circuit did not reverse the Court on this issue. The Court, as

[1] While the Court has admitted the Deposition, it specifically declines to reopen this trial for the submission of additional evidence. The record of this matter, except for admission of the Deposition, was closed at the conclusion of the trial on September 14, 2022.

the trier of fact, finds the Deposition testimony does not support recharacterization based upon this factor.

II. The presence or absence of a fixed maturity date and schedule of payments; and,

III. The presence or absence of a fixed rate of interest and interest payments.

The Court determined in the Findings that the Notes payable to the order of Bowie or Cecelia, evidencing the indebtedness, and assigned to Bay Bridge were enforceable as a matter of Kentucky Law under Article 3 of the Uniform Commercial Code. (*See* Findings, IV. Conclusions of Law, Enforceability of TLS and ITS Notes under Kentucky Law, ¶¶ 1-15; *See also* ¶¶ 41-45.) The Sixth Circuit did not reverse the Court on this issue.

The Circuit Opinion expresses concern about the effect Mr. Siegel's testimony would have on the Court's determination insofar as it relates to these two factors. (*See* Circuit Opinion 12.) The Circuit Opinion suggested the Court review the testimony regarding arm's length negotiations over the terms of the Notes, citing to Mr. Siegel's suggestion that he did not concern himself with the "language" of the Notes. The Court finds that Mr. Siegel testified at length suggesting at first that he did not remember if there were negotiations on the terms of the Notes, to yes, there were extensive negotiations involving many of the cast of characters and not all held the same interests. (*See* PX-2, Siegel Dep. 83-118.) The Deposition is replete with inherent contradictions. The Court, as the trier of fact, finds the Deposition testimony does not support recharacterization based upon either of these factors. Thus, after a full review of the record, the directives of the Sixth Circuit, and the Deposition, the Court finds that there is no basis for it to change the analysis of either of these factors or its decision contained in the Findings.

The Circuit Opinion also expresses concern that Siegel "testified that he did not find it 'important whether [Cecelia] got paid in two years or three years' because the terminal project, if

successful, could generate a windfall." (*See* Circuit Opinion 12.) Mr. Siegel also testified that he expected all of the lenders to be paid out of new financing in the sum of $40 million from Great American Capital Partners. This loan could not close due to the dispute with the City of Oakland. (*See* PX-2, Siegal Dep. 44-48.) The Court, as the trier of fact, finds the Deposition testimony does not support recharacterization based upon either of these factors. This set of facts plus numerous contradictions contained in Mr. Siegel's testimony, coupled with the inability of Bay Bridge to cross-examine him, render ITS' argument for recharacterization unsupportable. The Court, after a full review of the record, the directives of the Sixth Circuit and the Deposition, finds that there is no basis for it to change the analysis of these factors or its decision contained in the Findings.

IV. The source of repayments.

The Court finds the Deposition testimony does not support recharacterization based upon this factor. The contradictions of Mr. Siegel's testimony, coupled with the inability of Bay Bridge to cross-examine him, render ITS' argument for recharacterization unsupportable. *See* the Court's reasoning in paragraphs II and III above. The Court, after a full review of the record, the directives of the Sixth Circuit and the Deposition, finds that there is no basis for it to change the analysis of this factor or its decision contained in the Findings. (*See* Findings, ¶¶ 57-60.)

V. The adequacy or inadequacy of capitalization.

The Court finds the Deposition testimony does not support recharacterization based upon this factor. At best, Mr. Siegel's testimony is contradictory. The Court refers in the Findings to the testimony of Mr. Vikas Tandon who indicated AWL believed ITS was adequately capitalized. (*See* Findings, ¶¶ 50-55; *See also* DX-22, Tandon Dep. 135-139.) The Court, after a full review of the record, the directives of the Sixth Circuit and the Deposition, finds that there is no basis for it to change the analysis of this factor or its decision contained in the Findings.

VI. The identity of interest between the creditor and the stockholder.

The Court finds the Deposition testimony does not support recharacterization based upon this factor. The Court finds its original Findings relating to the identity of interest, or lack thereof, between Cecelia and TLS or ITS to be unaffected by the Deposition. (*See* Findings, ¶¶ 17-37.) The Court, after a full review of the record, the directives of the Sixth Circuit and the Deposition, finds that there is no basis for it to change the analysis of this factor or its decision contained in the Findings.

VII. The security, if any, for the advances.

The Court, after a full review of the record, the directives of the Sixth Circuit and the Deposition, finds that there is no basis for it to change the analysis of this factor or its decision contained in the Findings. (*See* Findings, ¶ 67.)

VIII. The corporation's ability to obtain financing from outside lending institutions.

The record of this case coupled with the Deposition strongly suggests ITS' ability to obtain financing from outside lending institutions. The Court, after a full review of the record, the directives of the Sixth Circuit and the Deposition, finds that there is no basis for it to change the analysis of this factor or its decision contained in the Findings. (*See* Findings, ¶¶ 69-70.)

IX. The extent to which the advances were subordinated to the claims of outside creditors.

The Court, after a full review of the record, the directives of the Sixth Circuit and the Deposition, finds that there is no basis for it to change the analysis of this factor or its decision contained in the Findings. (*See* Findings, ¶ 72.)

X. The extent to which the advances were used to acquire capital assets.

The Court, after a full review of the record, the directives of the Sixth Circuit and the Deposition, finds that there is no basis for it to change the analysis of this factor or its decision contained in the Findings. (*See* Findings, ¶ 74.)

XI. The presence or absence of a sinking fund to provide repayments.

The Court, after a full review of the record, the directives of the Sixth Circuit and the Deposition, finds that there is no basis for it to change the analysis of this factor or its decision contained in the Findings. (*See* Findings, ¶ 76.)

The Court observes that the *AutoStyle* factors, read with 11 U.S.C. § 105(a), permit the Court to recharacterize "debt" as "equity" under appropriate circumstances. The Court, as the trier of fact, has the responsibility to evaluate all of the evidence and the law in order to fulfill its duty to decide the outcome. In this case, the Court has done so.

## **CONCLUSION**

The Court believes that it has fully complied with the directions of the Sixth Circuit Court of Appeals in its Opinion and Judgment filed on August 25, 2025. The error of law pursuant to Civil Rule 32 in the Findings of Fact and Conclusions of Law entered by this Court on January 11, 2023 has been acknowledged and corrected. Fed. R. Evid. 801(d)(2), as amended, has also been acknowledged. On remand to this Court, Bay Bridge and ITS agreed to admission of the Deposition and it is now fully admitted into the record. The Court has once again reviewed the Deposition in its entirety and considered it as argued by the respective parties to this case. The Court has reexamined the *AutoStyle* factors in light of the admission of the Deposition into the record and said admission does not alter the outcome. ITS has failed to carry its burden of proof as to the recharacterization of the Bay Bridge claim from debt to equity.

In sum, the Court has reconsidered its Findings of Fact and Conclusions of Law entered by this Court on January 11, 2023 and corrected the error of law regarding Civil Rule 32, acknowledged Fed. R. Evid. 801(d)(2), as amended, and admitted the Deposition. Therefore, except as specifically corrected herein, the Court's original Findings of Fact and Conclusions of Law entered by this Court on January 11, 2023 are hereby adopted.

This is a final and appealable Order and there is no just reason for delay.

Joan A. Lloyd
United States Bankruptcy Judge
Dated: October 13, 2026